IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHANNON ELKINS                                                                                    PLAINTIFF


v.                                      Case No. 4:18-cv-4115


MILLER COUNTY, ARKANSAS;
MILLER COUNTY SHERIFF'S DEPARTMENT;
RON STOVALL, individually and in his capacity
as sheriff of Miller County, Arkansas;
JESSIE GRIGSBY, individually and in his capacity
as a Miller County deputy sheriff[1]                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 14). Plaintiff

has filed a response. (ECF No. 22). Defendants have filed a reply. (ECF No. 27). The Court

finds this matter ripe for consideration.

### BACKGROUND

This is a sex discrimination and retaliation action brought under Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Arkansas Civil Rights Act

("ACRA"), Ark. Code Ann. §16-123-107(a)(1). Plaintiff is a female who was employed by

Defendant Miller County, Arkansas. Plaintiff alleges that she was subjected to a hostile work

environment when Defendant Grigsby repeatedly sexually harassed her and that she was fired in

retaliation for reporting the sexual harassment to her supervisors and the Equal Employment

Opportunity Commission ("EEOC").

---

[1] The Miller County Sheriff's Department has been dismissed as a party to this action.

Plaintiff began her employment with Miller County in September 2013, initially as a detention officer in the Miller County Jail. In early 2015, Plaintiff became a patrol officer with the Miller County Sheriff's Department. After serving as a patrol officer for approximately one year, Plaintiff was transferred to the Bi-State Drug Task Force on February 29, 2016. While working with the task force, Plaintiff was partnered with Defendant Grigsby, another Miler County deputy sheriff.

At some point after becoming partners, Plaintiff alleges that Defendant Grigsby began sexually harassing her.[2] Plaintiff alleges that the harassment consisted of multiple "small" instances where Defendant Grigsby attempted to verbally solicit sex from her. Plaintiff is unable to recount how many times Defendant Grigsby allegedly propositioned her, or the specifics of anything said during these exchanges. However, Plaintiff alleges that the gist of these encounters was that Defendant Grigsby told her it would be convenient for them to engage in a sexual relationship because she was single, and they spent so much time alone together. Plaintiff claims that she repeatedly refused Defendant Grigsby's advances.

Plaintiff also alleges that there were two "bigger" instances of sexual harassment. The first of these bigger instances consisted of a discussion where Defendant Grigsby allegedly invited her to go on a "mudding"[3] trip where the participants would ride four-wheelers during the day and engage in sexual activities at night. Plaintiff claims that she informed Defendant Grigsby that she was open to the prospect of riding four-wheelers but that she was not interested in engaging in sexual activity with anyone.

---

[2] Plaintiff is unable to provide a timeline of any alleged instances of sexual harassment.
[3] Generally, mudding involves driving an all-terrain vehicle off-road through wet fields, streams, lakeshores, lakebeds, or other muddy areas. Individuals who go mudding generally race through these areas, spinning their tires and throwing mud.

The second bigger instance of alleged sexual harassment occurred during a trip to the mall in Hot Springs, Arkansas. Plaintiff alleges that Defendant Grigsby suggested they go to the mall during a break at a conference for narcotics law enforcement officers. Once at the mall, Plaintiff alleges that she told Defendant Grigsby that she needed to go to Victoria's Secret to purchase sports bras. Plaintiff alleges that she told Defendant Grigsby that he did not need to accompany her, but he told her "don't worry about it." Plaintiff and Defendant Grigsby entered Victoria's Secret where Plaintiff alleges that Defendant Grigsby said that he would buy her lingerie if she would model it for him back at their hotel. Plaintiff claims that she responded that she "wouldn't buy that underwear even if I was doing it for myself." Plaintiff then proceeded to try on several garments, ultimately purchasing a "regular bra."

Plaintiff also alleges that she had conversations with Defendant Grigsby about another woman that Defendant Grigsby was allegedly pursuing. Plaintiff alleges that Defendant Grigsby asked her to purchase flowers for this other woman so Defendant Grigsby's wife would not see any record of the purchase. Plaintiff claims that she purchased the flowers as requested. Defendant Grigsby maintains that he never propositioned or otherwise sexually harassed Plaintiff.

On June 13, 2016, the Bi-State Drug Task Force began investigating a report of a possible murder for hire. That same day, Plaintiff attended a meeting where the investigation was discussed in depth. At this meeting, task force members were instructed to keep all aspects of the investigation confidential. The intended victims of the murder for hire were Plaintiff's roommate's brother and his girlfriend. Plaintiff broke confidentiality and revealed details of the investigation to her roommate who subsequently informed his brother, stymieing the investigation. Plaintiff later informed her task force supervisor that she had divulged details about the investigation to her roommate.

Approximately one week after telling her supervisor that she had leaked details of the investigation, Plaintiff told him that Defendant Grigsby was treating her "shady." Her supervisor asked Plaintiff what she meant by "shady," and she told her supervisor that Defendant Grigsby was not talking to her like he had before and seemed to be avoiding her. Plaintiff's supervisor told her that Defendant Grigsby's conduct was likely the result of her breaking the task force's trust by breaching confidentiality in the murder for hire investigation. Plaintiff did not report any sexual harassment by Defendant Grigsby at that time. On June 27, 2016, Plaintiff voluntarily transferred out of the Bi-State Drug Task Force and returned to her position as a patrol officer with the Miller County Sheriff's Department. Plaintiff cited a potential deployment to Africa with her National Guard unit as her reason for leaving the task force.

On August 11, 2016, Plaintiff reported that Defendant Grigsby had sexually harassed her to one of her supervisors, Sergeant Kathy Hillis. Sergeant Hillis reported Plaintiff's allegations of sexual harassment to her supervisors and the Miller County Sheriff's Office began an internal investigation. The result of the internal investigation was that the investigators could not sustain Plaintiff's allegations.

On September 7, 2016, Plaintiff was on patrol and pulled over a motorist for suspected drunk driving. Defendants characterize the stop as routine and unnecessary because the motorist had simply swerved to avoid a large pothole in the road. However, Plaintiff contends that the motorist was driving erratically and tried to evade pursuit. Instead of conducting field sobriety tests herself, Plaintiff called in an Arkansas State Trooper to administer the sobriety tests for her. The delay in waiting for the trooper caused the traffic stop to last approximately thirty minutes, causing Plaintiff's supervisors to question whether the stop was constitutional.

On September 8, 2016, Plaintiff filed an EEOC charge alleging sex discrimination. On September 15, 2016, Defendant Stovall, the Miller County Sheriff, met with legal counsel and made the decision to fire Plaintiff. On September 20, 2016, Defendant Stovall terminated Plaintiff's employment, citing the potentially unconstitutional traffic stop. After her employment was terminated, Plaintiff amended her EEOC charge to include retaliation.

On May 11, 2018, the EEOC provided Plaintiff with a notice-of-rights letter. On August 18, 2018, Plaintiff filed suit in this Court. Plaintiff alleges that Defendants' actions constituted sexual discrimination and retaliation in violation of Title VII and the ACRA. On August 28, 2019, Defendants filed the instant motion asserting that they are entitled to summary judgment on all claims. Plaintiff opposes the motion.

## LEGAL STANDARD

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The

moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## DISCUSSION

### I. Plaintiff's Statement of Disputed Facts

As an initial matter, the Court must address Plaintiff's statement of disputed facts. A party responding to a motion for summary judgment "shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried" and "[a]ll material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party." Local Rule 56.1. Plaintiff did not file a statement of disputed facts. Rather, Plaintiff filed her own statement of facts. Thus, to the extent any facts in Defendants' statement of facts are not directly controverted by Plaintiff's statement of facts, they will be deemed admitted.

Defendants also object that some evidence contained in Plaintiff's summary judgment response is inadmissible and therefore should not be considered. However, "the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in original). Defendants do not identify any specific evidence or argue why it could not conceivably be admissible at trial in some form. Therefore, the Court will

consider all of Plaintiff's evidence that it finds could be admissible in ruling on the instant motion.

## II. Sex Discrimination

The Court now turns to Plaintiff's sex discrimination hostile-work-environment claims.[4]

Title VII provides, in relevant part, that an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). A successful hostile-work-environment claim under Title VII must show that: (1) the plaintiff belongs to a protected group; (2) the plaintiff experienced unwelcome harassment; (3) there was a causal link between the harassment and the plaintiff's membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment. *Beard v. Flying J, Inc.*, 266 F.3d 792, 797 (8th Cir. 2001). When the harassment was at the hands of a co-worker, rather than a supervisor, a fifth *prima facie* element must be shown: that the employer knew or should have known about the harassment and failed to take proper action. *See Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). "The question of whether an environment is sufficiently hostile to be actionable is a legal question, and, like any legal question, is a matter for the court to decide. In other words, a showing of some minimal level of harassment is necessary before a case is submissible to a jury." *Jackson v. Flint Ink N. Am. Corp.*, 382 F.3d 869, 869 (8th Cir. 2004).

Defendants argue that Plaintiff cannot make a *prima facie* case of sex discrimination because Plaintiff has failed to demonstrate that (1) there was "unwelcome" sexual harassment; (2) that the alleged harassment was so severe or pervasive that it affected a term, condition, or privilege of Plaintiff's employment; and (3) that Defendant Miller County knew or should have known of

---

[4] The analysis for sex discrimination hostile-work-environment claims under Title VII and the ACRA is the same. *Nichols v. Tri-Nat'l Logistics, Inc.*, 809 F.3d 981, 985 (8th Cir. 2016).

the harassment and failed to take remedial action. The Court addresses each of these arguments in turn.

### A. Unwelcome Sexual Harassment

Defendants argue that Plaintiff cannot establish that she experienced unwelcome sexual harassment.

The conduct at issue must be "unwelcome" in that the plaintiff regarded it as undesirable or offensive and neither solicited nor invited it. *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir. 1999). The proper inquiry as to whether an individual considers behavior to be "unwelcome" is whether he or she indicates as such through his or her own conduct. *Id.* A plaintiff cannot establish that she experienced unwelcome harassment if she fails to complain about the alleged incident. *See Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 632 (8th Cir. 2000). Generally, fear of retaliation is not a proper excuse for an employee's failure to report sexual harassment. *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 422 (8th Cir. 2010). However, an employee can be excused for a delay in reporting harassment if the employee can demonstrate a truly credible threat of retaliation. *Id.* That being said, retroactive complaints alone are insufficient to establish past unwelcome harassment. *See Stuart*, 217 F.3d at 632; *Pimentel v. St. Louis Pub. Sch.*, No. 4:08-cv-1477 TIA, 2011 WL 128788, at *12 (E.D. Mo. Jan. 14, 2011) (finding plaintiff's sole complaint of sexual harassment to be insufficient to show she found herself subjected to unwelcome harassment during the eight months prior to the date of the complaint).

Upon consideration, the Court agrees with Defendants. Plaintiff makes numerous arguments about whether she engaged in sexually charged joking or banter with co-workers and about how these instances differed from and did not encourage Defendant Grigsby's alleged conduct. However, Plaintiff has not actually pointed to any evidence in the summary judgment

record demonstrating that she regarded Defendant Grigsby's alleged conduct as undesirable or offensive. *See* Fed. R. Civ. P. 56(c)(1)(a) (stating that party asserting that fact is genuinely disputed must cite to summary judgment record to support their assertion). Plaintiff did not complaint about Defendant Grigsby's conduct as it occurred, and her retroactive complaint is insufficient to establish past unwelcome sexual harassment. Moreover, Plaintiff's conduct in response to Defendant Grigsby alleged advances did not indicate that she found his conduct to be offensive. Plaintiff brushed off any alleged advances, accepting Defendant Grigsby's invitation to ride four-wheelers and continuing to shop for lingerie with Defendant Grigsby still in the store. Therefore, the Court finds that Plaintiff has failed to demonstrate that she was subjected to unwelcome sexual harassment. However, assuming *arguendo* that Plaintiff satisfies this element, the Court will proceed to the remaining disputed elements.

### B. Harassment so Severe or Pervasive that it Affected a Term, Condition, or Privilege of Plaintiff's Employment

Defendants next argue that Plaintiff cannot establish that harassment was so severe or pervasive that it affected a term, condition, or privilege of her employment.

Title VII does not prohibit all verbal or physical harassment and "is not a general civility code for the American Workplace." *Nitsche*, 446 F.3d at 846. "Harassment is actionable if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 888 (8th Cir. 1998) (internal quotation omitted). To clear the high threshold of actionable harm, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Scusa*, 181 F.3d at 967 (stating that actionable harassment must be "so intimidating, offensive, or hostile that it poisoned the work environment") (internal quotation omitted). "Simple teasing, offhand comments, and isolated

incidents generally cannot amount to severe or pervasive harassment." *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). These demanding standards are designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation omitted). Although isolated incidents generally do not constitute severe or pervasive harassment, extremely serious isolated incidents can amount to actionable harm. *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003) (citing *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 454-57 (8th Cir. 2001)).

The harassing conduct must be enough to create a hostile environment from both the objective standpoint of a reasonable viewer and from the plaintiff's subjective standpoint. *Phillips*, 156 F.3d at 888. In determining whether conduct objectively creates a hostile environment, courts examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Defendant Grigsby's alleged conduct—propositioning Plaintiff, inviting her to go mudding, following her into Victoria's Secret, and discussing another woman he was pursuing— if true, constitutes decidedly immature, unprofessional, and unpleasant behavior, but is not egregious enough to satisfy the high burden for actionable harassment under Title VII. These alleged instances of sexual harassment could cause offense or embarrassment, but they were not physically or overtly threatening. They involved no physical contact. They consisted of small remarks over a three-month period and were limited to two "bigger" instances. During these "bigger instances," Plaintiff brushed off Defendant Grigsby's alleged advances and accepted the

invitation to go mudding and continued shopping for lingerie in Defendant Grigsby's presence. Plaintiff argues that the alleged harassment affected her employment because she transferred out of the task force and back to patrol. However, Plaintiff has not cited to any evidence in the summary judgment record suggesting that she transferred from the task force back to patrol to evade Defendant Grigsby. *See* Fed. R. Civ. P. 56(c)(1)(a). Rather, the undisputed facts show that Plaintiff indicated she was transferring because of her National Guard unit's potential deployment to Africa. Further, as discussed above, Plaintiff has also failed to cite to any evidence that she considered Defendant Grigsby's condut to be subjectively offensive.

Moreover, the Eighth Circuit has rejected hostile-work-environment claims based on facts equally or more egregious than those in this case. *See, e.g.*, *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010) (finding conduct over a two-year period to not be sufficiently severe or pervasive where it included the defendant pulling the plaintiff's hair, wiping his hand across the plaintiff's breast, responding in an angry and threatening manner to the plaintiff rejecting his suggestion that they be "more than friends," and spreading a rumor that the plaintiff performed oral sex on him); *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (finding no sufficiently severe or pervasive conduct where a supervisor occasionally rubbed the plaintiff's shoulders and back, called her "baby doll" during a phone call, accused her of not wanting to be "one of [his] girls," suggested that she should be in bed with him and a Mai Tai in Florida, and insinuated that she could advance in the company if she "got along" with him); *Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 977-78, 980 (8th Cir. 2003) (finding conduct over a two-year period to be inappropriate, but not sufficiently severe or pervasive, where it included regular calls to the plaintiff's home, frequent visits to her office, discussions about relationships with his wife and other women, touching the plaintiff's arm, saying he "loved" her

and she was "very special," placing romance novels in her faculty mailbox, and invading her personal space).

Accordingly, the Court finds that Plaintiff has failed to demonstrate that she was subjected to harassment so pervasive that it affected a term, condition, or privilege of her employment.

### C. Knowledge of Harassment and Failure to Take Remedial Action

Finally, Defendants argue that Plaintiff has failed to prove that Defendant Miller County knew or should have known of the harassment and failed to take remedial action.

"Sexual harassment . . . is a violation of Title VII if the employer knew or should have known of the harassment and failed to take immediate and appropriate action." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1378 (8th Cir. 1996). "Prompt remedial action shields an employer from liability when the harassing conduct is committed by a co-worker rather than by a supervisor." *Meriwether*, 326 F.3d at 994. Courts consider several factors in assessing the reasonableness of an employer's remedial measures: "the temporal proximity between the notice and remedial action, the disciplinary or preventive measures taken, and whether the measures ended the harassment." *Id.*

The undisputed facts show that Defendant Miller County did not know and could not have known about Defendant Grigsby's alleged conduct as it occurred, and that when it finally did become aware of the sexual harassment, it immediately took remedial action. All of the alleged instances of sexual harassment took place when Plaintiff and Defendant Grigsby were alone. Plaintiff did not report the alleged sexual harassment until she transferred out of the task force, and when she finally did report, Defendant Miller County immediately began an investigation. The investigation did not sustain the sexual harassment charges. However, Plaintiff and Defendant Grigsby were already separated. As such, the Court finds that Plaintiff has failed to demonstrate

that Defendant Miller County knew or should have known of the harassment and failed to take remedial action.

### D. Conclusion

As discussed above, the Court finds that Plaintiff cannot satisfy all requisite elements of her sex discrimination hostile-work-environment claims. Accordingly, the Court finds that Defendants' Motion for Summary Judgment should be granted as to Plaintiff's Title VII and ACRA sex discrimination claims.

### III. Retaliation—Title VII

The Court now addresses Plaintiff's retaliation claims.[5]

"Title VII prohibits employers from retaliating against employees who file charges of discrimination or who assist others in opposing discrimination." *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). To survive a motion for summary judgment on a retaliation claim, Plaintiff either must offer direct evidence of retaliation or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework. *Lors v. Dean,* 746 F.3d 857, 865 (8th Cir. 2014). Because Plaintiff has failed to produce direct evidence of retaliation, the Court must analyze Plaintiff's retaliation claim under *McDonnell Douglas*.

Under *McDonnell Douglas*, an employee must first establish a *prima facie* case of retaliation. *Okruhlik v. Unvi. of Ark.*, 395 F.3d 872, 878 (8th Cir. 2005). "If an employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th

---

[5] The analysis for retaliation claims under Title VII and the ACRA is the same. *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 861 (8th Cir. 2005).

Cir. 2011). "[I]f the employer does so, the burden then shifts back to the employee to put forth evidence of pretext." *Id.* (internal quotation omitted).

### A. Prima Facie Case

As noted above, Plaintiff bears the initial *McDonnell Douglas* burden of establishing a *prima facie* case of retaliation under Title VII. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). The plaintiff need make only a minimal showing to establish a *prima facie* case before the burden of production shifts to the employer. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002).

The first question the Court must address is whether Plaintiff engaged in statutorily protected activity. Protected activity "can be either opposing an act of discrimination made unlawful by Title VII . . . or participating in an investigation under Title VII." *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). Defendants argue that Plaintiff did not engage in protected activity because "her assertion of sexual harassment/hostile work environment is woefully deficient and fails to state a colorable claim." "A finding of unlawful retaliation, however, is not conditioned on the merits of the underlying discrimination complaint." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000). The undisputed facts show that Plaintiff reported that she had been sexual harassed to her supervisor, triggering an internal investigation, and that she filed a sex discrimination charge with the EEOC. This is protected conduct under Title VII. *Smith*, 151 F.3d at 818. Therefore, Plaintiff has satisfied the first element of her *prima facie* case.

The Court must next address whether Plaintiff suffered an adverse employment action. An adverse employment action is defined as a "tangible change in working conditions that produces a material employment disadvantage," and includes termination. *Jackman*, 728 F.3d at 804. In the case at bar, Plaintiff's employment was terminated. Thus, Plaintiff has satisfied the second element of her *prima facie* case.

Finally, the Court must decide whether a causal connection exists between the two events. Extremely close temporal proximity between the protected act and the adverse employment action is sufficient to prove that a causal connection exists. *See Smith*, 302 F.3d at 832-33 (discussing temporal proximity of protected act and adverse employment action in relation to making *prima facie* case of retaliation). Plaintiff reported that she had been harassed on August 11, 2016, she filed her EECO sex discrimination charge on September 8, 2016. Defendant Stovall made the decision to fire Plaintiff on September 15, 2016, and her employment was terminated on September 20, 2016. This temporal proximity alone is sufficient to establish a causal connection.

In sum, Plaintiff has made her *prima facie* case of retaliation. Thus, the *McDonnell Douglas* burden shifts back to Defendants to articulate a legitimate non-retaliatory reason for terminating Plaintiff's employment.

### B. Legitimate Non-Retaliatory Reason

Because Plaintiff has carried her *prima facie* burden, Defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Hughes v. Stottlemyre*, 506 F.3d 675, 679 (8th Cir. 2007). This burden is a light one, as it is "one of production, not persuasion; it 'can involve no credibility assessment.'" *Sisk v. Picture People, Inc.*, 669 F.3d 896, 899 (8th Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Defendants state that Plaintiff was fired because she made a potentially unconstitutional traffic stop. Defendants further state that the decision to terminate Plaintiff was bolstered by her breach

of confidentiality while serving with the task force and by complaints from supervisors and training officers about her job performance. This proffered reason is sufficient to shift the burden back to Plaintiff to prove that it is a mere pretext for retaliation.

### C. Pretext

Defendants have articulated an arguably legitimate, nondiscriminatory reason for Plaintiff's termination, and thus, the burden shifts again to Plaintiff to produce evidence that Defendants' articulated reason for her dismissal was pretext for unlawful retaliation. *Smith*, 302 F.3d at 833. "[T]o prove pretext in a retaliation case, the plaintiff 'must both discredit [the] asserted reason for the [adverse action] and show the circumstances permit drawing a reasonable inference that the real reason for [the adverse action] was retaliation.'" *Pedersen v. Bio–Med. Applications of Minn.*, 775 F.3d 1049, 1055 (8th Cir. 2015) (quoting *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 918 (8th Cir. 2007)). At this stage of the analysis, the plaintiff's evidence is "evaluated in light of other evidence, or lack of other evidence, in the record." *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir. 2000). Therefore, temporal "proximity alone is insufficient to establish pretext." *Gibson v. Geithner*, 776 F.3d 536, 542 (8th Cir. 2015). As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation. *Sims v. Sauer-Sundstrand Co.*, 130 F.3d 341, 343 (8th Cir. 1997). The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months. *See, e.g.*, *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009).

Defendants argue that Plaintiff was fired because of the potentially unconstitutional traffic stop. Defendant Stovall stated in both an affidavit and in deposition testimony that he would have fired any other deputy for the same conduct and that his decision to fire Plaintiff was bolstered by her breach of confidentiality, her supervisors and training officers performance reports, and that

she did not know or seemed unwilling to learn basic patrol procedures. Plaintiff responds, arguing that there are genuine disputes of material fact which preclude summary judgment on this issue. Specifically, Plaintiff, in a deposition, testified that one of her supervisors informed her that Defendant Stovall, in an effort to make her termination appear legitimate, instructed her supervisors and training officers to begin writing negative reports about her and to post-date the reports to before she reported that she had been sexually harassed. Plaintiff also argues, and has presented evidence, that she had no history of negative reports or evaluations prior to reporting that she had been harassed.

Plaintiff has also submitted the Miller County Sheriff's Department discipline policy as evidence of retaliation. The discipline policy details a three-step discipline procedure. On a first offense, employees found to be in violation are first given a verbal reprimand. On a subsequent offense, employees receive a verbal reprimand and a written memo detailing the infraction that they must sign. On a third infraction, employees receive verbal and written notice of termination. The discipline policy also states that employees may be fired without cause or for a single instance of egregious conduct. Examples of egregious conduct listed in the policy include being convicted of a felony, taking a bribe, and violating the sexual harassment policy. Plaintiff states that she never went through any of the three-step discipline process and that her alleged infraction—the lengthy traffic stop—does not amount to the type of conduct that warrants immediate termination. Thus, Plaintiff contends that this failure to follow the discipline policy is evidence of retaliation.

The Court agrees with Plaintiff that genuine disputes of material fact exists to prevent the Court from ruling on this issue as a matter of law. As discussed above, Plaintiff has presented evidence in the form of deposition testimony which indicates that Defendant Stovall instructed her supervisors to begin writing post-dated, negative reports. Plaintiff has also presented evidence

that she had a satisfactory performance record before her supervisors began writing these reports. Finally, review of the Miller County Sheriff's Department's discipline policy combined with the close temporal proximity of events presents a reasonable inference from which a jury could conclude that Defendants retaliated against Plaintiff.

Accordingly, the Court cannot rule as a matter of law that summary judgment is appropriate on Plaintiff's retaliation claims.

### D. Individual Liability Under ACRA

The Court must now address whether Defendants Stovall and Grigsby can be held liable for retaliation in their individual capacities under the ACRA.[6] The analysis for retaliation claims under Title VII and the ACRA is the same. *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 861 (8th Cir. 2005). However, ACRA allows for individual capacity claims against supervisors, whereas Title VII does not. *Calaway v. Practice Mgmt. Servs., Inc.*, 2010 Ark. 432, 1 (2010). Defendants Stovall and Grigsby assert that they are entitled to qualified immunity on Plaintiff's individual capacity ACRA claims. Defendant Grigsby also asserts that he cannot be held individually liable because he was not involved in the decision to terminate Plaintiff's employment.

### 1. Qualified Immunity

The analysis used in determining whether summary judgment on the grounds of qualified immunity is appropriate under the ACRA is derived from the standard used for qualified immunity claims in federal civil rights actions. *Sullivan v. Coney*, 2013 Ark. 222, 6, 427 S.W.3d 682, 685-86 (2013) (internal citation and quotation omitted). Under this analysis, a motion for summary judgment based on qualified immunity is precluded only when the plaintiff has: (1) asserted a

---

[6] Plaintiff sues Defendants Stovall and Grigsby in their individual capacities. However, Plaintiff concedes that Defendants Stovall and Grigsby cannot be held liable in their individual capacities under Title VII. (ECF No. 23, p. 1). As discussed above, Plaintiff's ACRA sex discrimination claim fails on its merits. Therefore, Plaintiff's only remaining individual capacity claim is her ACRA retaliation claim.

statutory or constitutional violation, (2) demonstrated that the statutory or constitutional right is clearly established, and (3) raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *Id.* Therefore, "[a]n official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge." *Smith v. Brt*, 363 Ark. 126, 131, 211 S.W.3d 485, 489 (2005). The objective reasonable-person standard is a legal inquiry, and whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law. *Id.* "[T]he burden remains on the proponent of the immunity to establish the relevant predicate facts, and at the summary-judgment stage the nonmoving party is given the benefit of all reasonable inferences." *Baldridge v. Cordes*, 350 Ark. 114, 121, 85 S.W.3d 511, 515 (2002).

Defendants' entire qualified immunity analysis is limited to a two-sentence long footnote. Defendants do not cite to any legal authority, establish any relevant predicate facts, or address any of the requisite elements to support a finding of qualified immunity. This deficiency prevents the Court from finding that Defendants Stovall and Grigsby are entitled to qualified immunity. *See id.* (stating that the party asserting qualified immunity bears burden of proving they are entitled to qualified immunity).

### 2. Defendant Grigsby

Defendants argue that Defendant Grigsby cannot be held individually liable because he did not engage in any retaliatory conduct.

Upon review of the summary judgment record, the Court agrees with Defendants. The undisputed facts show that although Defendant Grigsby may have made uncouth remarks to Plaintiff, there is no evidence that he engaged in any conduct motivated by retaliatory animus after

Plaintiff reported that he sexually harassed her. Therefore, Plaintiff's individual capacity ACRA retaliation claim against defendant Grigsby should be dismissed.

Overall, the Court finds that Defendant Stovall may be held liable in his individual capacity on Plaintiff's ACRA retaliation claim.

### IV.   Lost Wages Damages

Finally, the Court turns to Defendants' argument that Plaintiff cannot support a claim for lost wages.

Defendants argue that Plaintiff has not provided any financial records to support a lost wages claim, has not named an economic expert to opine on the claim, and has not come forward with any other proof of lost wages caused by the Defendants. Thus, Defendants argue that no reasonable juror could award lost wages in this case. Plaintiff responds that she plans to put on evidence of wage loss and other damages at trial.

While Plaintiff must certainly put on evidence of lost wages to recover, she need not prove the exact amount of damages before trial. On summary judgment, Defendants must show that Plaintiff is legally barred from recovering lost wages or that the undisputed facts show that Plaintiff had no wage loss. However, Defendants have cited no such authority and made no such argument.

Accordingly, Plaintiff may seek damages for lost wages.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Motion for Summary Judgement (ECF No. 14) should be and hereby is **GRANTED in part and DENIED in part**. The Court finds as follows:

1.   Plaintiff's Title VII and ACRA sex discrimination claims are hereby **DISMISSED WITH PREJUDICE**;

2. Plaintiff's Title VII and ACRA retaliation claims remain for trial;

3. Defendant Stovall is subject to individual liability on Plaintiff's ACRA retaliation claim;

4. Plaintiff's individual capacity ACRA retaliation claim against Defendant Grigsby hereby is **DISMISSED WITH PREJUDICE**.  Accordingly, Defendant Grigsby is hereby dismissed as a defendant in this action;

5. Plaintiff may attempt to recover damages for lost wages.

**IT IS SO ORDERED**, this 22nd day of October, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge